William D. FOSTER and Jan Foster, Appellant Pro Se,

v.

VILLAGE OF BROWNINGTON, et al., Respondents.

No. WD 59311.

Missouri Court of Appeals, Western District.

May 21, 2002.

William Foster, Kansas City, pro se.

Jan Foster, Kansas City, pro se.

Hurley D. Mahan, Clinton, for respondents.

Before JOSEPH M. ELLIS, Presiding Judge, EDWIN H. SMITH, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

Prior to 1993, Appellants William D. Foster and Jan Foster purchased a piece of property in Brownington, Missouri, adjacent to 8th Street. Eighth Street was originally platted back in the 1870s, but the street had not been developed at the time Appellants purchased their property.

In 1993 or 1994, the county put up street signs in the city, including one for 8th Street. On July 11, 1995, the city board conducted a meeting, and a citizen asked the board to have gravel placed on 8th Street between Main Street and Highway BB. The board then voted to place gravel on the road, and this was accomplished the following day. This upset Appellants and caused them to make numerous complaints to the board.

On January 11, 1996, Appellants filed a petition in the Circuit Court of Henry County. That petition was subsequently amended three times. In relevant part, Appellants' fourth amended petition alleged that the land on which 8th Street rested had not been properly dedicated to Brownington in 1871 because the woman who dedicated the property had previously conveyed it and did not own the property at the time of dedication. Appellants' petition also alleged that the board had violated the Sunshine Law in conducting the July 11, 1995 meeting and at a subsequent meeting.

On March 1, 1999, Appellants' counsel filed a motion for leave to withdraw. Subsequent to the filing of this motion, Appellants proceeded *pro se*. On May 27, 1999, the trial court granted the attorney for Appellants leave to withdraw.

The case was tried to the court on August 16, 2000. After presenting the testimony of seven witnesses, Mrs. Foster stated, "We have no further witnesses to call, Your Honor." The court then asked, "I understand the Petitioner rests. Is that correct?" Appellants responded, "Yes, your honor."

Subsequently, Respondents moved the court for judgment at the close of plaintiffs' evidence claiming that Appellants had failed to present sufficient evidence to support their claims. After Respondents offered their argument, the following exchange occurred:

The Court: And, Mrs. Foster, I'd like to hear your response, please.

Mrs. Foster: My response is I have not even had a chance to begin arguing to present my evidence. Now we're—we're talking about the Sunshine Law here. If I may make reference to—

The Court: Wait a minute. Wait a minute. Wait a minute. You—You have to have evidence before you can argue.

Mrs. Foster: Exactly.

The Court: Okay. And you've rested. You've quit. You said I don't have any more evidence.

Mrs. Foster: No, Your Honor. I said that I had no more questions for witnesses.

The Court: I asked specifically, "Does the Petitioner rest?"

Mrs. Foster: Your Honor, I did not understand the question then.

The Court: You said, "We have no more evidence."

Mrs. Foster: No, Your Honor.

The Court: I looked up in—

Mrs. Foster: Did I—Did I say that?

The Court:—utter surprise and amazement and said, "Do I understand that the Petitioner rests?" And you said, "Yes."

Mrs. Foster: What I thought you meant was, did I have any more questions for the witnesses, because you did tell me I would have a chance to present my evidence.

The Court: That's what this case is about was presenting evidence, and you've rested. You cannot reopen your case.

* * *

The Court: I'm ... willing to hear any response that you have to Mr. Mahan's motion for judgment for Defendants as to Counts I, II and IV.

Mrs. Foster: Your Honor, we object to Mr. Mahan's request. It has been stated—Mr.—Mr. Miller in his testimony stated he did not know the Sunshine Law. He stated that—that, when we asked for the minutes, they were denied us. That indicates a violation of the Sunshine Law.

Now they say that they had a meeting—they had a notice of meeting on the door. To us, that's a contrived after-the-fact notice. That is not the kind of notice that is required by the requirements of the Sunshine Law. There's a specific form that needs to be posted, a specific wording and agenda. That's not been done.

Now, like I said before, I was there that day. There was no notice posted. And that in effect would be a violation of the Sunshine Law. So to us it's a closed meeting.

Now the fact that they might have told—We—We were—We were told later by people that were there, including Mrs. Tulli, who—who testified, that somebody told her there was going to be a meeting. Well, they told a few people who were interested in four-wheelers that there would be a deputy there to discuss four-wheelers. Now Mrs. Dean has gone. She's not here to retract my statement. But she herself called me after that meeting. And she told me how angry she was, because that was not supposed to be part of the meeting, that all they were supposed to do was discuss four-wheelers.

The Court: Anything further?

Mrs. Foster: That's it. We just would—would like you not—not to—We'd like you not to—He says I can't give any more testimony. We'd like you to overrule his recommendation to the Court.

The Court: Well, there is the thing that we have in the—in the law, and I recognize that you are not a lawyer, but when you act as one, then you must comply with the rules. And you're certainly entitled to represent yourself, but you—but if you're going to act like a lawyer, you've got to be a lawyer.

And there is a principle in law—The basic principle of the law is that the Plaintiff has the burden of proof. You—You cannot—What that means is you cannot sue someone and then require them to come in and prove that they are innocent, that they didn't do what you did.

And that's what you're asking me to do. You're asking me to say: Well, they didn't show us that there was a meeting there. Well, that's not their burden to show that there was—that there was a notice. It is your burden to show that there was no notice.

Mrs. Foster: Your Honor, we had all the evidence here. Like I said, I did not understand when you asked me that question.

The Court: Twice.

Mrs. Foster: I did not understand what that meant, Your Honor. If you had—If you had gone a little further and said you—"In other words, you have no more evidence to present," I would have said yes, I have tons of evidence to present.

The Court: Let—I will refresh—From—From my memory, you said, "We have no more evidence."

Mrs. Foster: No.

The Court: And I said, "Does that mean that you are resting?"

Mrs. Foster: But, Your Honor—Is there some way you can play that back, because I did not say that. I said we had—

The Court: Well, the Court of Appeals will have an opportunity to play it back.

Mrs. Foster: Yes.

The Court: I'm going to sustain the motion for judgment for Defendant as to Counts I, II and III(sic), for failure of the Plaintiffs to meet their burden of proof.

Mrs. Foster: Your Honor—

Mr. Mahan: Judge, it's Count IV.

The Court: Count IV. Excuse me. Yes, ma'am.

Mrs. Foster: All the other evidence that we have—Now we have read that, even though it won't be admitted, may we introduce this to be forwarded to the Court of Appeals?

The Court: Court of Appeals is going to hear what I heard. They're going to see if I made any mistakes. They're not going to—They're not going to—They're not—It's not—

Mrs. Foster: Well, I read—I read someplace in the court rules that, even if you don't admit evidence, it's got to be—it—it may be included when—for the Court of Appeals to view.

The Court: I'm—I'm not permitted to practice law. And if you have found that, then I certainly would assert

that. But that's not what I believe the law to be.

Okay. We'll be adjourned.

In accordance with its ruling at trial, the trial court entered judgment in favor of Respondents on their motion for judgment at the close of Appellants' evidence. Appellants, again proceeding *pro se*, bring five points on appeal. These points will be addressed out of order.

■■■ We initially note that Appellants' statement of facts fails to comply with the applicable rules of appellate procedure.[1] Rule 84.04(c) requires the appellants to include in their brief a "fair and concise statement of the facts relevant to the questions presented for determination without argument." *Hansen v. Missouri Real Estate Appraisers Comm'n*, 875 S.W.2d 620, 621 (Mo.App. S.D.1994). Furthermore, Rule 84.04(i) requires Appellants to provide specific page references to the legal file or transcript for all statements of fact.

■■■ In their statement of facts, Appellants fail to cite to specific page references for most of their factual assertions, make numerous factual assertions which have no supporting evidence in the record, and include improper argument. These violations of Rule 84.04 constitute grounds for dismissing Appellants' appeal. *In re Marriage of Gerhard*, 34 S.W.3d 305, 308 (Mo.App. S.D.2001). But appeals should be decided on the merits if possible. *Brown v. Hamid*, 856 S.W.2d 51, 53 (Mo. banc 1993). While we certainly do not condone noncompliance with the rules, the briefs in

---

1. "Parties who represent themselves must satisfy all relevant rules of procedure." *Hansen v. Missouri Real Estate Appraisers Comm'n*, 875 S.W.2d 620, 621 (Mo.App. S.D.1994). " 'They are entitled to no indulgence they would not have received if represented by counsel.' " *Id.* (quoting *Jim Medve Inv. Co. v. Bailous*, 740 S.W.2d 678, 680 (Mo.App. E.D. 1987)). " 'While this court recognizes the problems faced by pro se litigants, we cannot relax our standards for non-lawyers. It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties.' " *In re Marriage of Gerhard*, 34 S.W.3d 305, 308 (Mo.App. S.D.2001) (quoting *Perkel v. Stringfellow*, 19 S.W.3d 141, 147 (Mo.App. S.D.2000)).

this case do delineate the issues and present argument from which the issues can be decided. Thus, the deficiencies in Appellants' brief do not prevent review on the merits, and, therefore, we will address Appellants' arguments on appeal.

■ We begin with Appellants' second point on appeal. In that point, Appellants claim the trial court committed plain error and improperly acted as an advocate for Respondents when the court stated, "I probably should have allowed [Respondents' counsel] to make any objections; there are any number of other objections that could be made to the photographs." Appellants contend that the court was improperly prompting Respondents' attorney to make further objection to the photographs they were seeking to introduce into evidence and pointing out that there were objections to be made.

■ Having failed to preserve this argument for appeal, Appellants have asked that we review for plain error. "Plain error review is proper in civil cases only if we find that 'the error has affected the parties' rights so substantially that a miscarriage of justice or manifest injustice would occur if the error were left uncorrected.'" *In re Swearingen*, 42 S.W.3d 741, 746 (Mo.App. W.D.2001) (quoting *Peterson v. National Carriers, Inc.*, 972 S.W.2d 349, 357 (Mo.App. W.D.1998)).

Appellants have failed to identify any possible prejudice that could have resulted from this comment, let alone shown a manifest injustice or miscarriage of justice warranting plain error review. After the trial court made the statement, counsel for Respondents stated that he was going to waive any objection to the admission of Appellants' photographs, and the trial court admitted them all into evidence. Moreover, having reviewed the record as a whole, prior to the comment attacked on appeal, it appears that the trial court bent over backward attempting to walk Appellants through the necessary foundational requirements to have the photographs admitted into evidence. In making the comment at issue, it appears that the trial court was merely affording Respondents the opportunity to get back into the proceedings and make any further objections they had to the admission of the photographs. Perceiving no possible manifest injustice or miscarriage of justice resulting from the trial court's comments, we decline to entertain plain error review. Point denied.

■ In their fourth point, Appellants contend the trial court erred in granting judgment on behalf of Respondents on point II of their petition, in which they claim ownership of the property where the gravel road was established, because Respondents had failed to deny certain averments contained in the petition. Specifically, Appellants claim that Respondents failed to deny their claim that they owned certain pieces of property and should therefore be deemed to have admitted Appellants' ownership of the referenced property under Rule 55.09.

In their answer to the relevant paragraph in the petition, Respondents denied any knowledge regarding Appellants' ownership of the referenced property. In accordance with Rule 55.07, "[i]f the responding party is without knowledge or information sufficient to form a belief as to the truth of a specific averment, the party shall so state, and this has the effect of a denial." Accordingly, contrary to Appellants assertion, Respondents' petition sufficiently denied the averments Appellants claim to have been admitted. Point denied.

Finally, Appellants' first, third and fifth points all claim error resulting from the trial court's decision not to allow them to

reopen their case and present further evidence. Appellants claim that the trial court thereby denied them their right to due process and their right to be heard.

■ The trial court is afforded wide discretion in determining whether to reopen a case to allow the admission of additional evidence. *City of Riverside v. Progressive Inv. Club of Kansas City, Inc.,* 45 S.W.3d 905, 910 (Mo.App. W.D.2001). "The trial court's decision as to whether to reopen a case will be reversed only upon a showing of abuse of discretion." *Id.* However, " '[w]hen there is no inconvenience to the Court or unfair advantage to one of the parties, there is an abuse of discretion and a new trial will be directed upon a refusal to reopen a case and permit the introduction of material evidence, that is evidence that would substantially affect the merits of the action and perhaps alter the Court's decision.' " *Anderson v. Mantel,* 49 S.W.3d 760, 765 (Mo.App. S.D.2001) (quoting *In re Estate of Mapes,* 738 S.W.2d 853, 855 (Mo. banc 1987)); *See also City of Riverside,* 45 S.W.3d at 910; *Page v. Lewis,* 902 S.W.2d 359, 360–61 (Mo.App. E.D. 1995).

■ In this case, Appellants made their motion to reopen before the trial court granted Respondents' motion for judgment at the close of Appellants' evidence. Respondents have not identified any inconvenience to the trial court or unfair advantage to Appellants that would have resulted from allowing them to reopen their case, and we do not readily perceive any from the record. *See Page,* 902 S.W.2d at 361 (holding the trial court abused its discretion in failing to reopen the plaintiff's case where the motion to reopen was made prior to the trial court's grant of defendant's motion for directed verdict and evidence sought to be introduced was material to the case). Accordingly, under the applicable case law, we must consider whether the trial court could have properly found that the evidence sought to be introduced by Appellants was not material to the case.

In declining to reopen the evidence, the trial court mistakenly commented that Appellants had previously stated that they had "no more evidence" and refused to consult the record to review their actual comments. The record clearly reflects that Mrs. Foster stated, "We have no further witnesses to call, Your Honor." This mistake, conjoined with the trial court's failure to allow the Appellants to make an offer of proof showing what additional evidence they were seeking to introduce, prevented the trial court from properly considering whether any of the additional evidence was material to the case such as to require the court to grant appellants motion to reopen their case. In combination, the trial court's actions have the secondary effect of precluding this court from reviewing the case to determine whether the evidence Appellants sought to introduce could have substantially affected the merits of the case or potentially altered the trial court's judgment.

We are not unsympathetic to the frustrations trial courts experience in dealing with *pro se* litigants who are neither trained in court procedures nor educated in the law. From our review of the record in this case, it is evident that the trial judge went out of his way to be calm, fair, impartial, restrained, and to give very significant leeway to the Appellants in the presentation of their case. Nevertheless, our decision must be guided by applicable case law and the record presented, and based thereon, we can only conclude that the trial court abused its discretion by refusing to permit Appellants to reopen their case without having reviewed the additional evidence they sought to introduce.

For the foregoing reasons, the judgment of the trial court is reversed. Since we have no way of determining whether the evidence Appellants wished to present was material,[2] we have no alternative but to remand the case for a new trial.

All concur.

---

**2.** "[T]hat is evidence that would substantially affect the merits of the action and perhaps alter the Court's decision." *In Re Estate of Mapes,* 738 S.W.2d 853, 855 (Mo. banc 1987)